UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL MUNOZ, | ) |
|           Plaintiff, | ) No. 18 CV 2571 |
| v. | ) Magistrate Judge Young B. Kim |
| MENARD, INC., | ) |
|           Defendant. | ) April 23, 2019 |

**MEMORANDUM OPINION and ORDER**

Plaintiff Paul Munoz filed this premises liability action against Defendant Menard, Inc. ("Menard") in the Circuit Court of Cook County, Illinois, alleging that Menard negligently caused him to be injured when automatic sliding doors malfunctioned and closed on him. Menard, a Wisconsin corporation with a principal place of business in Wisconsin, removed the matter to this court. (R. 1, Notice of Removal ¶ 7.) The parties then consented to this court's jurisdiction. (R. 12.) Before the court is Menard's motion for summary judgment. For the following reasons, the motion is denied:

**Background**[1]

On August 21, 2017, Munoz claims he sustained injuries when entering a Menard store in Bradley, Illinois. (R. 30, Def.'s L.R. 56.1 Stmt. ¶¶ 1, 4.) More

---

[1] The facts in this section are drawn from the parties' Local Rule 56.1 statements and responses. (R. 30; R. 38; R. 46.) Where the parties disagree about the facts, the court presents each side's position but views the facts in the light most favorable to Munoz, the non-moving party here. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

specifically, Munoz was walking through a set of automatic doors into the garden center of a Menard store when the doors "made contact with his upper arms and hips." (Id. ¶¶ 1, 3.) The doors had been in the process of closing when Munoz placed "his foot across the threshold" to enter the garden center. (Id. ¶ 10.)

Munoz had shopped at the store "on a regular basis" before the alleged incident. (Id. ¶ 2.) He had an opportunity to see the automatic doors open and close before he tried to enter the garden center, and the doors were moving at a regular speed. (Id. ¶¶ 4-6.) Munoz is familiar "with the concept of an automatic door that is controlled by a sensor," (id. ¶ 11), and did not notice anything indicating a malfunction with the automatic doors before the incident, (id. ¶¶ 7-9).

The parties dispute whether the automatic doors were defective at the time they closed on Munoz. Menard asserts that the doors were not defective. For support Menard points to the deposition testimony of one of its managers, Daniel Douglas, who was on duty at the time of the incident. (Id. ¶ 12.) Douglas has worked as a manager at the Menard store in Bradley for 10 years. (Id. ¶ 13.) Douglas testified that Record Automatic Doors ("RAD"), an outside company that services the automatic doors, "came out [to] the Bradley store and looked at" the doors after the incident on August 21, 2017, and determined that there were no sensor issues with the doors. (Id. ¶¶ 15-17.) Douglas further testified that the doors were not closing more quickly than normal on the day of the incident and that wind does not affect the operation of the doors. (Id. ¶¶ 18-19.)

Munoz objects to Douglas's testimony, arguing that he is not competent to testify as to "the door's speed" at the time of the incident because he did not observe the automatic doors when the incident occurred. (R. 38, Pl.'s L.R. 56.1 Resp. Stmt. ¶ 18.) The court sustains Munoz's objection and does not rely on Douglas's testimony in this regard for purposes of the present motion because Menard has not demonstrated that Douglas has personal knowledge of the door's functioning at the time of the incident. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also* Fed. R. Civ. P. 56(c)(4) (stating that testimony used to oppose summary judgment must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). Also, to the extent that Douglas relies on statements made by RAD employees, such testimony constitutes inadmissible hearsay insofar as it is being used to prove the truth of the matter asserted.

Furthermore, Munoz points to a purported admission that he says a Menard employee made to him after the incident. Cashier Dawn Goode, who was working in the garden center when the incident occurred, admitted to Munoz, according to him,[2] that "on a windy day [the automatic doors] act up like that." (R. 38, Pl.'s L.R. 56.1 Resp. Stmt. ¶ 19.)

---

[2] Goode has denied making the statement attributed to her by Munoz. (R. 45-2, Goode Dep. Tr. at 9:8-10.) Nevertheless, when ruling on a motion for summary judgment, all facts must be viewed in the light most favorable to Munoz as the non-moving party. *See O'Leary*, 657 F.3d at 630.

3

Munoz also disputes Menard's characterization of RAD's services and findings. (Id. ¶¶ 15-17.) Munoz clarifies that RAD services the automatic doors only upon Menard's request. (Id. ¶ 15.) Munoz further points to RAD's September 8, 2017 invoice and states that RAD "repaired the bottom track" of the garden center automatic doors after the incident, and that "there is no evidence that [RAD] . . . inspected the sensor" or affirmed that "there were no issues with the sensor."[3] (Id. ¶¶ 16, 17 (noting that RAD's service invoice notes only the repair work to the bottom track); see also id., Exs. 2, 3.)

Munoz offers "additional material facts" to oppose summary judgment. (R. 38, Pl.'s L.R. 56.1 Stmt. of Addt'l Facts.) As the sole support for each additional fact, Munoz cites to a January 7, 2019 report from Lee E. Martin, AIA, of Robson Forensic. (Id., Ex. 4.) In its reply brief, Menard moves to strike Martin's expert report, arguing that it is offered without a supporting affidavit, and thus may not be used to support or oppose summary judgment. (R. 45, Def.'s Reply at 1-2 (citing *Wittmer v. Peters*, 87 F.3d 916, 917 (7th Cir. 1996) (finding that unsworn statements are not "'strictly speaking[]' admissible to support or oppose summary judgment")).) Menard further argues that Martin's report does not satisfy Federal Rule of Evidence 702, it says, because his testimony is not reliable. (R. 45, Def.'s Reply at 2-3.) For support Menard asserts that Martin did not disclose the surveillance footage upon which he relies, did not inspect the doors, and did not review relevant information disclosed by Menard.

---

[3] The parties do not dispute the admissibility of RAD's invoice, which Munoz attached as Exhibits 2 and 3 to his memorandum. (See R. 38, Pl.'s L.R. 56.1 Resp. Stmt., Exs. 2, 3.)

4

(Id. at 3-4.) Because Martin's report is not supported by an affidavit, and questions remain as to its reliability and therefore admissibility, the court does not rely on the report for purposes of ruling on the motion for summary judgment.[4] *See Wittmer*, 87 F.3d at 917 (citing *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989) (declining at summary judgment to consider a report from an alleged expert because "[t]he substance of this report was not sworn to by the alleged expert")).

Munoz argues that the doors' sensors should have detected his presence when he entered the "activating zone" and signaled the doors to remain open or re-open to avoid coming in contact with Munoz. (R. 38, Pl.'s L.R. 56.1 Stmt. of Addt'l Facts ¶¶ 2-5.) As such, he claims that the failure of the doors to remain open or re-open constituted a "defect in operation." (Id. ¶ 4.) Menard responds that RAD inspected the doors after the incident and found them to be in working order without any sensor issues. (R. 46, Def.'s L.R. 56.1 Resp. Stmt. ¶ 4.) Menard also objects that it is speculative of Munoz to assert that properly functioning sensors would have prevented his claimed injuries. (Id. ¶¶ 1-2.) The court sustains Menard's objection for purposes of this motion. *See Trimble v. Alliance-DeKalb/Rock-Tenn Co.*, 801 F. Supp. 2d 764, 769 (N.D. Ill. 2011) (finding that "conclusory allegations, unsupported by specific facts, will not suffice" to oppose summary judgment) (internal quotation and citation omitted).

---

[4] If Menard seeks to exclude Martin's report at trial, Menard should file an appropriate motion pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), after the close of expert discovery.

5

Munoz further asserts that Menard failed to follow a number of required standards to ensure the safe and proper functioning of the doors. (R. 38, Pl.'s L.R. 56.1 Stmt. of Addt'l Facts ¶¶ 1, 7-10.) For example, the type of door at issue has a standard requiring "a presence sensing safety device [to] be used to prevent (a) fully open door[] from closing when a person is in the door closing path." (Id. ¶ 1.) If Menard had "[n]on-malfunctioning presence sensors," the doors would not have struck and injured him, according to Munoz. (Id.) Munoz also claims that Menard violated the American Association of Automatic Door Manufacturers manual by not following a regular maintenance plan for the automatic doors, and that Menard knew or should have known of the required practice of scheduling regular maintenance and performing daily safety checks. (Id. ¶¶ 7-8.) Had Menard followed the required practice, Munoz contends that it "most likely" could have prevented his injuries. (Id. ¶¶ 8-9.) In failing to do so, Menard "violated the standard of care for operation and maintenance of automatic doors," according to him. (Id. ¶ 10.)

Menard responds that the standards cited by Munoz are not germane here. The standard requiring "a presence sensing safety device [to] be used to prevent (a) fully open door[] from closing when a person is in the door closing path" does not apply, Menard argues, because the doors were not "fully open" when Munoz "placed his foot across the threshold." (R. 46, Def.'s L.R. 56.1 Resp. Stmt. ¶ 1.) Menard further contends that the standard "is intended as a guide" and is not a legal standard. (Id.) Menard denies the assertion that it does not follow a regular maintenance plan for the doors, stating that it performs "informal examinations or

6

inspections in the regular course of business" and that RAD "performed work in the 5 years prior to" the incident. (Id. ¶ 7 (noting that in July 2015 RAD replaced the doors' sensor).) Menard also objects to Munoz's legal arguments that the company "knew or should have known of the required practice in scheduling regular maintenance" for the doors. (Id. ¶ 9.) The court agrees that legal arguments have no place in response to a Rule 56.1 statement and therefore sustains Menard's objection. Fed. R. Civ. P. 56(c); L.R. 56.1(b); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts.").

## Analysis

Summary judgment is appropriate when the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be

7

evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

Because this is a diversity action, the task of the court is "to ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by the court if the present case were before it now." *Swearingen v. Momentive Specialty Chems., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011) (internal quotation and citation omitted). Neither party disputes the application of Illinois law to the facts of this case. *See Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012).

To recover under a premises liability theory under Illinois law, Munoz must establish "the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Keating v. 68th & Paxton, L.L.C.*, 936 N.E.2d 1050, 1064 (Ill. App. Ct. 2010); *see also Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018) (citing *Wilfong v. L.J. Dodd Constr.*, 401 Ill. App. 3d 1044, 1051 (Ill. App. Ct. 2010)). Menard does not dispute that it owed Munoz a duty to maintain its property in "a reasonably safe condition." *See Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988) ("This includes a duty to inspect and repair dangerous conditions on [the] property or give adequate warnings to prevent injury."). Thus, the court considers whether the evidence is sufficient to establish a genuine dispute as to whether Menard breached its duty and whether such a breach proximately caused Munoz's injuries.

First, Menard argues that summary judgment is warranted in this case because, it says, Munoz has not made a showing that it breached a duty to him. More specifically, Menard argues that Munoz cannot prove that the automatic doors were defective or that Menard was negligent in failing to detect such a defect. (R. 32, Def.'s Mot. at 3-4.) As to the condition of the doors, Menard relies upon Douglas's testimony that there were no problems with the doors at the time of the incident. (Id. at 4.) But as Munoz points out, Douglas did not observe the doors when the incident occurred, and his testimony based on statements made by RAD technicians amounts to inadmissible hearsay. (R. 38, Pl.'s L.R. 56.1 Resp. Stmt. ¶ 18.) The court therefore does not rely on such testimony for purposes of this motion. See Fed. R. Civ. P. 56(c); L.R. 56.1(b). Menard also points to RAD's invoice from the period after the incident and argues that because it does not mention any sensor issues, there could be no defect with the doors' sensors. (R. 30, Def.'s L.R. 56.1 Stmt. ¶ 17; R. 32, Def.'s Mem. at 4.) Munoz is correct, however, that the invoice itself does not establish that RAD inspected the sensors or that RAD technicians concluded there were no issues with the sensors. (R. 38, Pl.'s L.R. 56.1 Resp. Stmt. ¶¶ 16, 17.) Menard would have to offer the testimony of RAD technicians to support its assertions.

As to Menard's notice of the condition of the doors, Menard argues that Munoz cannot prove knowledge or constructive knowledge of a dangerous condition. (R. 45, Def.'s Reply at 7-8.) Whether a defendant has constructive notice of a defect typically is a factual question to be decided by the trier of fact. *See Culli*, 862 F.2d at 123. Nevertheless, Menard asserts that summary judgment is appropriate because no

9

reasonable jury could conclude that it had notice that the doors—or sensors—were defective. (R. 45, Def.'s Reply at 5-8.) Menard again points to the testimony of Douglas, who said he was not aware of the doors closing more quickly than usual because of wind or any issues with the doors' sensors. (Id. at 5 (citing R. 30-4, Douglas Dep. Tr. at 19:22-20:5).) But Douglas's testimony on this point conflicts with Goode's claimed admission to Munoz, thereby creating a genuine issue of material fact as to whether Menard should have known that the automatic doors were less than optimal in windy conditions. (R. 38, Pl.'s L.R. 56.1 Resp. Stmt. ¶ 19.) Menard also asserts that its employees informally inspected the doors in the regular course of business and never discovered any malfunctioning. (R. 45, Def.'s Reply at 6-8.) But Menard supplies no details as to which employees made such inspections, whether the employees were trained to make adequate inspections of safety mechanisms, or when and how frequently such inspections took place.[5]

In support of its motion, Menard relies upon two cases, *Britton v. University of Chicago Hospitals*, 382 Ill. App. 3d 1009 (Ill. App. Ct. 2008), and *Catalano v. Menard, Inc.*, No. 16 CV 3367, 2017 WL 2720432 (N.D. Ill. June 23, 2017). (R. 32, Def.'s Mot. at 3-4; R. 45, Def.'s Reply at 7-8.) In *Britton* the plaintiff was injured when he entered a revolving door carrying an overnight bag and food and had to give the door a "shove" and "real hard" push to move the door, causing the glass in the door to shatter. 382

---

[5] Although Munoz bears the burden of proving each element of his negligence claim, as the movant Menard must set forth a sufficient basis to support a finding that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

10

Ill. App. 3d at 1010. The plaintiff alleged that the defendant was "negligent through careless management of the revolving door," including by failing "to make a reasonable inspection" of the door. *Id.* The court disagreed, finding nothing in the record regarding "any defect in the glass or the revolving door," "maintenance of the revolving door," or facts showing that the defendant "had actual or constructive notice of any defect in the revolving door." *Id.* at 1011. The record thus contained "no evidence creating any issues of material fact," and the court affirmed the trial court's grant of summary judgment. *Id.*

Menard argues that *Britton* is analogous to this case. (R. 32, Def.'s Mem. at 4.) The court disagrees. Unlike *Britton* the record here—when viewed in Munoz's favor, as the court must at this stage—includes facts that a reasonable jury could construe as showing a defect in the doors. Indeed, whereas in *Britton* the plaintiff shoved and pushed the revolving door, here the doors closed on Munoz without any alleged act of force by him. (R. 1-1, Compl. ¶ 7.) Also, a Menard employee admitted to Munoz that "on a windy day [the garden center doors] act up like that." (R. 38, Pl.'s L.R. 56.1 Resp. Stmt. ¶ 19.) And when Menard asked RAD to inspect the doors after the incident, RAD "repaired the bottom track" of the doors. (Id. ¶ 16.) While the interior sensor in the doors was replaced in July 2015, no other evidence shows that RAD inspected or replaced the sensors thereafter, until after the incident occurred. (Id., Ex. 1 ¶ 15; R. 40, Pl.'s Mem. at 3.) *Britton* therefore is inapposite.

In *Catalano* the plaintiff sued Menard after automatic sliding doors struck her as she was leaving the store. 2017 WL 2720432, at *1-2. Menard had not received

11

complaints about the doors and the doors' sensors had not malfunctioned before the incident. *Id.* at *3. About a month before the incident, a windstorm blew open "the emergency breakaway panel" of the doors, but technicians serviced the doors three times before the incident and confirmed that the doors were functioning properly. *Id.* at *2-3. Moreover, Menard produced evidence showing that the doors were serviced six months before the incident. *Id.* at *3. The *Catalano* court thus determined that no facts supported a finding that Menard knew of an unreasonable risk of harm or breached a duty of care to the plaintiff. *Id.* at *6.

*Catalano* similarly is distinguishable from the facts in this case. Whereas in *Catalano* technicians serviced Menard's automatic doors several times before the incident, no evidence shows that RAD serviced the garden center doors at issue here since July 2015. (R. 38, Pl.'s L.R. 56.1 Resp. Stmt., Ex. 1 ¶ 15; R. 40, Pl.'s Mem. at 3.) Furthermore, while in *Catalano* the doors' sensors had not malfunctioned before the incident, Munoz claims that Goode admitted the doors "act up" on windy days, suggesting a history of malfunctioning—an inference this court draws in favor of Munoz. (R. 38, Pl.'s L.R. 56.1 Resp. Stmt. ¶ 19); *see also Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1007, 1012 (Ill. App. Ct. 2001) (finding, in a slip and fall case, that "an employee's knowledge of a dangerous condition . . . is considered sufficient to impute notice to a defendant employer"). And in *Catalano* technicians determined that the doors were functioning properly before the incident, but here RAD determined after the incident that the bottom track needed to be replaced. (R. 38, Pl.'s L.R. 56.1 Resp. Stmt. ¶ 16.) Thus, at this stage, there is enough evidence, when

12

accepted in Munoz's favor, to suggest that Menard had notice that the subject doors required maintenance prior to the subject incident.

Other cases involving automatic door malfunctioning support the denial of summary judgment. In *Balistreri v. Richard E. Jacobs Group, Inc.*, 322 F. Supp. 2d 972, 979 (E.D. Wis. 2004) (applying Wisconsin law), the court denied summary judgment where automatic doors struck the plaintiff because "a reasonable jury could conclude that defendant failed to take adequate precautions to maintain the door in a safe condition, and that such failure was the cause of the accident." Similarly, in *Karis v. Kroger Co.*, 26 Wis. 2d 277, 284-85 (1965) (applying Wisconsin law), the court found that a negligence theory could be "sustained on the theory of constructive notice" where automatic doors malfunctioned because evidence showed that the defendant did not abide by its duty "to make timely and adequate periodic inspections" to ensure safety devices were functioning properly. Finally, in *Force v. Richland Memorial Hospital*, 322 S.C. 283, 284-85 (S.C. Ct. App. 1996) (applying South Carolina law), the court found that the plaintiff could prove constructive notice by demonstrating that the defendant failed to perform daily inspections on automatic doors, train its employees to inspect and maintain the doors, and procure a maintenance package from the door company. Accordingly, this court finds a triable issue as to whether the doors were defective and, if so, whether Menard knew or should have known about such defect.

Second, Munoz presents enough circumstantial evidence that Menard's alleged failure to properly maintain and repair the doors proximately caused his injuries.

Illinois courts generally consider proximate cause to present a question of fact for the jury to decide. *Radtke v. Schal-Bovis, Inc.*, 328 Ill. App. 3d 51, 55 (Ill. App. Ct. 2002). Thus, courts will remove the proximate cause question from the jury only when "there can be no difference in the judgment of reasonable [persons] on inferences to be drawn.'" *Id.* (quoting *Bakkan v. Vondran*, 202 Ill. App. 3d 125, 128 (Ill. App. Ct. 1990)). Nonetheless, a plaintiff must establish that the defendant's acts or omissions were the cause of injury with "reasonable certainty." *Keating*, 401 Ill. App. 3d at 473. To do so, "[p]roximate cause may be established by inferences drawn from circumstantial evidence." *Calloway v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 112746, ¶ 77. However, proximate cause cannot be established through "speculation, surmise, or conjecture." *Keating*, 401 Ill. App. 3d at 473.

Menard argues that there is "no causal link" between any act by the company and Munoz's claimed injuries.[6] (R. 32, Def.'s Mem. at 4-5.) Menard asserts that there simply is "no evidence of anything wrong with the sensor of the automatic doors." (Id. at 4.) The court is not persuaded because of its obligation to view all facts in Munoz's favor. Munoz has offered enough evidence suggesting a defect in the doors and notice or constructive notice of the defect. And Goode's claimed admission could permit a fact finder reasonably to infer that Munoz was injured because Menard failed to

---

[6] Menard does not argue here that even if the doors were defective, Munoz's contact with the doors did not cause his alleged injuries. (R. 32, Def.'s Mem. at 4-5; R. 45, Def.'s Reply.) Nor could Menard advance such an argument in a motion for summary judgment given that Munoz testified that he sustained injuries because of the incident, (R. 30-3, Munoz Dep. Tr. 24:13-27:13). The court is not permitted to weigh the credibility of his testimony. *See Anderson*, 477 U.S. at 255.

properly maintain or repair the doors. Munoz need not "account for all physical phenomena that led to [his] injuries in order to survive summary judgment." *See Velez v. Menard, Inc.*, No. 13 CV 5045, 2014 WL 5423141, at *4 (N.D. Ill. Oct. 24, 2014). Instead, "the proximate causation inference to be drawn [must] be reasonable and not based on conjecture." *Id.* While Menard presents evidence from which a jury reasonably may infer that it was not negligent, viewing the facts in the light most favorable to Munoz at this stage, the evidence is enough to place Munoz's claim within the purview of the jury.

## Conclusion

For the foregoing reasons, Menard's motion for summary judgment is denied.

**ENTER:**

*[signature: Young B. Kim]*

**Young B. Kim**
**United States Magistrate Judge**