## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **PAUL MUNOZ,** | ) | |
| | ) | **No. 18 CV 2571** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **MENARD, INC.,** | ) | |
| | ) | **July 9, 2019** |
| **Defendant.** | ) | |

### MEMORANDUM OPINION and ORDER

Plaintiff Paul Munoz filed this premises liability action alleging that Defendant Menard, Inc. negligently caused him to be injured when automatic sliding doors at one of its stores malfunctioned. Before the court is Menard's motion to exclude Munoz's expert, Lee E. Martin. Martin is an architect who has opined as to Menard's allegedly improper maintenance, operation, and servicing of the subject sliding entrance doors. For the following reasons, Menard's motion is granted in part and denied in part:

### Background

The court denied Menard's summary judgment motion on April 23, 2019. (R. 49.) Detailed facts are set forth in that order. (Id.) Relevant to the present motion, Munoz claims he sustained injuries on August 21, 2017, when he was walking through automatic sliding doors to enter the garden center of a Menard store in Bradley, Illinois. Munoz claims that the sliding doors closed on him and struck his upper arms and hips. (Id. at 1-2.) The doors had been in the process of closing when

Munoz placed "his foot across the threshold."  (Id. at 2 (citing R. 30, Def.'s L.R. 56.1 Stmt. ¶ 10).)  After the doors reopened, Munoz entered the store.  (R. 37-2, Martin Rpt. at 3.)

Munoz has disclosed a report in which architect and "safety expert" Martin submits a number of opinions, including that Menard did not properly service or maintain the doors, did not conduct required safety checks, and violated the standard of care for automatic door operation and maintenance, thereby creating a dangerous condition that caused Munoz's injuries.  (R. 37-1, Martin CV at 1; R. 37-2, Martin Rpt. at 4-7.)  Specifically, Martin opines that the doors "struck Munoz because the motion sensor located above the exterior doors failed to detect him as he approached the entrance in the activating zone of the doorway."  (R. 37-2, Martin Rpt. at 3.)  Presence sensors also "failed to detect Munoz and hold the doors open," according to Martin. (Id.)  Martin concludes that the doors' failure to detect Munoz constituted a defective condition, which "violated applicable codes and door industry standards, and was dangerous in a manner that caused Munoz to be injured."  (Id.)

Martin cites codes and standards in support of his opinions.  First, Martin cites the International Building Code ("IBC"), International Fire Code ("IFC"), and International Property Maintenance Code ("IPMC"), all of which the Village of Bradley adopted in 2012, according to Martin.  (Id. at 4.)  Martin claims that together these codes require building owners and agents to properly maintain buildings and provide "a safe, continuous and unobstructed path of travel" as a means of egress. (Id. (citing IBC §§ 1001.3, 3401.2 (2012); IFC § 1008.1.4.2 (2012); IMPC § 702.1 (2012)

(internal quotations omitted).)  Martin next cites an American National Standards Institute ("ANSI")/Builders Hardware Manufacturers Association ("BHMA") standard as requiring automatic doors to have "an activating zone starting 5 [inches] from the faces of the horizontal sliding doors to a point at least 54 [inches] from the faces of the doors, and extending across the entire width of both moving door panels." (Id. (citing ANSI/BHMA Standard A156.10 § 5.1.2 (1991)).)  The ANSI/BHMA standard further requires that "a presence sensing safety device be used to prevent (a) fully open door(s) from closing when a person is in the door closing path."  (Id. at 5 (citing ANSI/BHMA Standard A156.10 § 5.2.2) (internal quotations omitted).) Finally, Martin cites materials from the American Association of Automatic Door Manufacturers ("AAADM") for the proposisions that "improperly adjusted doors can cause injury and/or equipment damage" and that owners "are responsible to inspect the operation of their doors on a daily basis."  (Id. (citing AAADM manual).)  Martin also refers to AAADM guidelines discussing the importance of "[p]lanned maintenance."  (Id. at 5-6 (citing AAADM circular).)

Based upon these codes and standards, Martin concludes that if Menard had performed daily safety checks and serviced the doors annually, "it is probable that the defective and dangerous condition of the incident doors would have been identified and corrected before . . . Munoz could be struck and injured by them."  (Id. at 6.)  Martin did not have personal knowledge of the doors' functioning at the time of the alleged incident.  Instead, Martin formed his opinions after reviewing the following items: (1) Menard store video showing the subject incident; (2) a work order

and invoice from Record Automatic Doors ("RAD"), an outside company that serviced the doors at Menard's request; (3) the complaint filed by Munoz in this matter; (4) Menard's summary judgment memorandum; and (5) deposition testimony of Munoz and Menard manager Daniel Douglas. (Id. at 2.)

## Analysis

In its motion to strike, Menard asks this court to bar Martin from testifying as to his opinions about the allegedly defective and dangerous condition of the automatic doors. Menard argues that Martin's testimony fails to satisfy Federal Rule of Evidence 702, which provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 adopts the standards for the admissibility of expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), and requires that "any and all scientific testimony or evidence admitted [be] not only relevant, but reliable." *See also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (clarifying that the court's "gatekeeping" role extends to all expert testimony, regardless of whether it is "scientific" in nature).

To determine whether expert testimony is relevant and reliable, "the district court must ascertain whether the expert is qualified, whether his or her methodology

is scientifically reliable, and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (quoting Fed. R. Evid. 702(a)). The party seeking to introduce the expert testimony bears the burden of proof. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "That said, rejecting an expert's testimony wholesale 'is the exception rather than the rule, and the trial court's role as gatekeeper is not intended' to replace cross-examination and the presentation of conflicting evidence as the traditional mechanisms for highlighting the weaknesses in expert testimony." *Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 3643682, at *2 (N.D. Ill. Aug. 23, 2012) (quoting *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1150 (N.D. Ill. 2001)).

Menard does not challenge Martin's qualifications as an architect/safety expert, (R. 59, Pl.'s Resp. at 2, 7), but objects to the reliability of his methodology and relevance of his testimony, (R. 57, Def.'s Mot. at 4-7). First, Menard argues that Martin invades the court's domain by "attempting to instruct the jury" that the codes and standards he cites in his report "are the legal standard in Illinois." (R. 57, Def.'s Mot. at 3-4.) Munoz disagrees, arguing that they are "guiding principles, and it is of little consequence that they are not 'legal requirements.'" (R. 59, Pl.'s Resp. at 3.) At this stage the court sees no reason to exclude Martin's testimony regarding industry codes or standards establishing safety guidelines for automatic doors—or, for that matter, general information about how automatic doors typically work. Such testimony may be relevant, for example, to Munoz's claim that Menard owed Munoz

a duty to maintain the doors in a reasonably safe condition. (See R. 1-1, Compl. ¶¶ 3, 5.) At trial Menard may cross examine Martin on the codes and standards he cites and present its own evidence to refute Martin's opinions on them. *See Wielgus*, 2012 WL 3643682, at *2.

However, the court will not permit Martin to offer opinions that Menard was not exercising proper care in maintaining, operating, or servicing the automatic doors or that any act or omission by Menard, including any alleged failure to abide by codes or standards, breached a duty of care or caused Munoz's injury. *See Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (finding inadmissible "expert testimony as to legal conclusions that will determine the outcome of the case"). Such conclusions "encroach on the jury's role as factfinder." *Clement v. Stanley Access Techs. LLC*, No. 2:15-CV-266, 2016 WL 4443702, at *2 (W.D. La. Aug. 19, 2016).

Second, Menard contends that Martin invades the jury's province when he offers what it characterizes as an improper legal conclusion that Menard's "failure . . . to maintain the automatic horizontal sliding doors in a safe condition violated the standard of care for automatic door operation and maintenance and created the dangerous condition that was the cause of Paul Munoz' injury." (R. 57, Def.'s Mot. at 5.) For his part, Munoz argues that Martin's "technical and specialized knowledge" will help the jury decide whether Menard was negligent. (R. 59, Pl.'s Resp. at 6.) According to Munoz, without such testimony, "[a] jury may not feel comfortable determining, based on the raw footage of the occurrence and the testimony of

laypeople alone, whether there was a defective condition and whether Menard's alleged lack of care produced that condition." (Id.)

The court agrees with Menard and bars Martin from offering legal conclusions. As Menard points out, Martin's testimony "is not needed to explain to the jury what the surveillance footage depicts" or "to explain the testimony of [Munoz] or the Menard manager . . . Douglas."[1] (R. 64, Def.'s Reply at 1-2.) Instead, the jury will watch the surveillance video and listen to testimony from fact witnesses and reach its own conclusions. *See Clement*, 2016 WL 4443702 at *2 ("[T]he surveillance video speaks for itself, and [the expert] may not offer opinions based on his interpretation of the video."). Experts simply are not permitted to instruct the jury on the legal conclusions it should reach. *See Good Shepherd*, 323 F.3d at 564. Accordingly, Martin will be barred from testifying that any failure to properly maintain, operate, or service the doors breached a duty of care or caused Munoz's injury.

---

[1] In its reply Menard attached as Exhibit C three video surveillance clips showing different views of the subject incident. (R. 64, Def.'s Reply at 2, Ex. C.) The court has reviewed the clips but elects not to rely on them given that these were first introduced as an exhibit to its reply brief. *See SEC v. Homa*, No. 99 CV 6895, 2006 WL 3267645, at *8 n.7 (N.D. Ill. Nov. 6, 2006) (noting that the court has "discretion as to whether to consider evidence raised for the first time in a reply brief" but that if considered, the opponent must be given an opportunity to respond) (citing *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)); *Monco v. Zoltek Corp.*, 317 F. Supp. 3d 995, 1001 n.3 (N.D. Ill. 2018) ("[L]itigants are chastised for raising new arguments or new evidence in reply briefs; a reply brief is for replying, not for raising a new ground."). Menard noted in its opening brief that Martin appears to rely solely on the footage to opine that the doors' sensors were defective. (R. 57, Def.'s Br. at 6.) On reply Menard argues that because the footage has never been made part of the record, Menard should make it available for review by the court. (R. 64, Def.'s Reply at 2.) The court finds Menard's overture untimely. Regardless, the court need not consider the footage to find that the jury is capable of watching it and determining for itself what the clips show.

Third, Menard argues that Martin's opinion that the sensor in the automatic doors was defective is speculative, unreliable, and not helpful to the jury. (R. 57, Def.'s Mot. at 6.) For support Menard points out that Martin did not inspect the doors or the sensor. (Id.) Nor did Martin conduct any tests or collect independent data to determine whether the sensor was defective. (Id.) Martin instead formed his opinion by watching a video of the incident and reviewing service records, court papers, and deposition transcripts. (Id.) Munoz responds that a "physical[] examin[ation] . . . after-the-fact" is neither necessary nor dispositive, "especially given [Martin's] extensive education and practical experience in architectural and building safety, his reliance on codes and nationally accepted standards governing the operation and maintenance of automatic doors matching the one in question, and his review of a video that is the best evidence of how the doors functioned on the date of the occurrence." (R. 59, Pl.'s Resp. at 11.)

Munoz urges the court to follow the reasoning set forth in *Dewick v. Maytag Corp.*, 324 F. Supp. 894 (N.D. Ill. 2004), and allow Martin's testimony that the automatic door sensors were defective. In *Dewick* the court allowed certain testimony from an expert in safety and fire protection engineering in a case involving an alleged safety issue with a broiler door. *Id.* at 897. A 10-month-old child climbed into the broiler compartment of a kitchen range and sustained injuries. *Id.* at 896. The defendant challenged the reliability of the expert's methodology, but the court permitted testimony relating to the expert's use of "sound" scientific methods, including force tests and collection of anthropometric data. *Id.* at 897-99. The court

rejected testimony, however, where the expert's opinions were based solely on "speculation or personal observation." *Id.* at 900.

Unlike in *Dewick*, here Martin has not cleared the reliability gate erected in *Daubert* and *Kumho*. *Dewick*, 324 F. Supp. 2d at 900; *see also Daubert*, 509 U.S. at 590-91; *Kumho*, 526 U.S. at 141. Martin did not perform an inspection, let alone testing, of the automatic doors or sensors. (R. 57, Def.'s Mot. at 6; R. 64, Def.'s Reply at 2-3.) Instead, he watched a store video and reviewed a work order and invoice, court papers, and deposition testimony to opine that the doors' sensors were defective. (R. 37-2, Martin's Rpt. at 6.) Martin's testimony is based on speculation, not sound scientific methods or measurements. *Dewick*, 324 F. Supp. 2d at 897-900. Not only is Martin's testimony unreliable, it is also irrelevant. There is no evidence that his opinion was based on scientific, technical, or other specialized knowledge that would assist the jury in understanding the evidence or determining a fact in issue. *See Bielskis*, 663 F.3d at 893. The testimony therefore fails the "helpfulness" standard, and instead is targeted toward instructing the jury what result to reach. (R. 64, Def.'s Reply at 3); *see also* Fed. R. Evid. 704 advisory committee's note ("The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact.").

In a case more closely aligned to the present case, *Perz v. Menard*, No. 2:10-CV-441, 2013 WL 12404369, at *2 (N.D. Ind. Aug. 22, 2013), the court barred expert testimony relating to the plaintiff's fall on a mat near the entry area of a Menard store. The court determined that the expert's "only knowledge of the condition of the

mat before and after [the plaintiff] fell [came] from his review of deposition testimony and the surveillance tapes of the incident." *Id.* Despite the expert's "impressive array of credentials," his report did not show "how his education and experience [gave] him any greater ability to evaluate the testimony of witnesses or to interpret video tapes than the average juror." *Id.* The same is true here. In his report Martin did not demonstrate why he was better equipped than the jury to review the video, production documents, or court papers and determine whether the automatic doors' sensors were defective.

Likewise, in *Coffee v. Menard, Inc.*, No. 13 CV 2726, 2015 WL 1399049, at *2-3 (N.D. Ill. March 25, 2015), the court granted a motion to strike expert testimony relating to whether Menard properly set up a grill display. In *Coffee* the plaintiff was walking down an aisle when a grill tipped toward him and struck his wrist and caused his shoulder to "pop." *Id.* at *2. The expert "reviewed deposition transcripts and other litigation materials" and opined that "the grill on display was not set up properly, and as a result, placed customers at a risk of injury." *Id.* (internal quotation omitted). The court found the expert's testimony unreliable because he did "not explain *how* he applied his retail safety experience to evaluate the . . . strength [of a chain draped over the axle of the grill], or the distance between [the] grill's wheels and the platform's edge," nor did he "perform any tests" or "cite[] any relevant prior experience with similar displays." *Id.* at *3. The court also found the testimony "not relevant" because the expert "simply [drew] common-sense conclusions that jurors without his experience are equally qualified to make." *Id.*

10

The reasoning applied in *Coffee* is apposite here. Martin did not explain in his report how he applied his architecture or safety experience to determine that "[t]he failure of the door sensors to detect Munoz in the activating zone in front of the exterior doors, or in the area between the interior and exterior activating zones, were defects in the door sensing system." (R. 37-2, Martin Rpt. at 3.) And Martin did not perform tests on the doors or sensors or cite relevant prior experience with similar doors or sensors. (See R. 37-1, Martin *curriculum vitae* at 1 (stating only generally that Martin has building safety experience in the "design construction or maintenance of . . . automatic doors"); R. 59, Pl.'s Resp. at 5-7.) Martin therefore is barred from testifying that the automatic doors—or any part thereof, including the motion and presence sensors—were defective at the time of the incident.

## Conclusion

For the foregoing reasons, Menard's motion to exclude Martin as an expert is granted in part and denied in part. At trial Martin may testify only regarding industry codes or standards establishing safety guidelines for automatic doors or general information about how automatic doors typically work, subject to further rulings of the court.

ENTER:

Young B. Kim
**United States Magistrate Judge**

11